**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

DASHEAN KEITH WILLIAMS,

        Petitioner,

v.                                      Case No. 17-13995

CATHERINE BAUMAN,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE AMENDED HABEAS CORPUS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Dashean Keith Williams, acting *pro se*, brings this amended habeas corpus petition, challenging his convictions for first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b.  He claims that: (1) the trial court violated his right to due process by threatening a prosecution witness with perjury when the witness denied seeing Petitioner shoot the victim; and (2) the prosecutor erred by introducing three witnesses' prior inconsistent statements that incriminated Petitioner.  Petitioner claims in the alternative that his trial attorney was ineffective for failing to object to these errors.

Respondent argues in an answer to the amended petition that Petitioner's due process and evidentiary claims are procedurally defaulted and that his claims about trial counsel lack merit.  The court agrees with Respondent and will deny the petition.

## I. BACKGROUND

### A. The Trial

Petitioner was tried before a jury in Wayne County Circuit Court.  The Michigan

Court of Appeals accurately summarized the evidence at trial as follows:

> This case arises out of the fatal shooting of the victim, Richarde Scarborough in the parking lot of an apartment building in Detroit on June 23, 2014.  Dontez Abram, who was 16 years old at the time of trial, testified that he was in the parking lot of the Jefferson Square apartment complex at approximately 11:00 p.m.  Scarborough, known as "Doughboy," was sitting in a car in the parking lot.  At some point, Dontez heard gunshots.  Upon hearing the gunshots, he ran down the street to meet up with his brother, Dioneta Abram.  Two days after the shooting, Dontez told the police that he had seen defendant shoot Scarborough, and he identified defendant in a photographic lineup.  Dontez had known defendant as a friend for five or six years at the time of the shooting.
>
> At trial, Dontez initially testified that he did not see defendant at the scene of the shooting.  However, after the trial judge advised Dontez, outside the presence of the jury, regarding the penalty for perjury, Dontez testified that, before he ran, he saw defendant shooting a handgun into the car where Scarborough was sitting.  The shooting occurred about eight to ten feet away from where Dontez was standing.  Dontez testified that his brother, Dioneta Abram, and Shajuan Hicks were in the car with Scarborough at the time of the shooting, but that Dioneta "hopped out the car and ran off" when the shooting began.  Dontez acknowledged that he told the prosecutor, on July 3, 2014, that he saw defendant shoot Scarborough, and that he testified at the preliminary examination that he saw defendant shoot Scarborough.  On cross-examination, Dontez admitted that, on the day before trial, he told defense counsel that he did not see defendant shoot Scarborough.  He stated that he did not know why he told defense counsel that he did not see the shooter, and testified that his testimony identifying defendant as the shooter was the truth.  Dontez denied seeing anyone by the name of "Tiger" at the scene at the time of the shooting.
>
> Dioneta, Dontez's brother, testified that he was sitting in the driver's side back seat of a vehicle in the parking lot of the apartment complex at approximately 10:30 p.m. while Scarborough was in the driver's seat.  He testified that Hicks was in the front passenger seat.  He further testified that he, Hicks, and Scarborough remained in the car for about two hours before a man nicknamed "Tiger," whose real name was Lafayette Hill, came to the car and asked Hicks to get out.  Hicks then exited the car.  About 45 minutes later, Dioneta heard gunshots and got onto the floor of the car.  When the

2

shooting stopped, he exited the car and heard Hicks say that Doughboy had been shot. Dioneta denied that people at the scene were screaming that defendant had shot Doughboy. He later testified, however, that the people at the scene did, in fact, say that defendant was the shooter. Dioneta denied ever telling anyone that defendant had shot Doughboy. On cross-examination, Dioneta testified that he did not see the shooter, but that he had seen Tiger with a gun at approximately 10:00 p.m. on the night of the shooting.

Sylvone Crosby testified that he had known defendant for a few years at the time of the shooting. On the night of the shooting, he was at the home of his aunt, Tonya Curtis, along with his friend, "Little D." He testified that Dioneta came to the house that night and told them that "Doughboy just got killed," but did not say who had killed him. The prosecutor then showed Crosby a written statement that he had given to the police on June 25, 2014. Crosby read the statement and acknowledged that, in the written statement, he stated that Dioneta had told him that defendant had shot Doughboy. When asked why he told the police that Dioneta had told him that defendant was the shooter, Crosby testified, "[b]ecause I had warrants and detective told me if I wrote it, he would let me go." Crosby again denied that Dioneta had ever told him that defendant was the shooter. Crosby testified that he lied to the police when he told them that he had heard that defendant was the shooter and when he told the police that he had often seen defendant with a gun in the past.

Defendant's mother, Khalilah Williams, was called by the prosecution and asked whether she had told the police that she had seen her son with a gun the day before the shooting. When she denied that she had done so, the prosecution questioned her regarding a statement she had given to the police on July 1, 2014. Williams acknowledged that the written statement indicated that she had seen defendant with a gun the day before the shooting and that defendant would shoot guns on occasion. She denied, however, that she had ever made such statements to the police. She testified that she had not been allowed to read the written statement before she signed it.

Detroit Police Officer Khary Mason, the officer in charge of the case, testified regarding a statement that defendant gave to him on August 19, 2014. Defendant told Officer Mason that, about two years before the shooting, defendant had shown Scarborough a firearm. When defendant asked for the weapon back, Scarborough "shot at him with it and said it's his now." Defendant also told Officer Mason that there was an argument between Scarborough and Tiger on the evening of the shooting, that he saw Tiger with a gun, and that Tiger shot Scarborough. Mason also testified that Khalilah Williams reviewed her written statement before she signed it.

3

*People v. Williams*, Case No. 326093, 2016 WL 3707998, at *1-2 (Mich. Ct. App. July 12, 2016). (*See also* ECF No. 10-7, PageID.333-399 (Dontez Abram's testimony); *id.* at PageID.400-447 (Dioneta Abram's testimony); ECF No. 10-8, PageID.460-486 (Sylvone Crosby's testimony); *id.* at PageID.487-524 (Khalilah Williams' testimony); *id.* at PageID.567-603, 606-618, 625-44 (Khary Mason's testimony).)

Petitioner waived his right to testify, (ECF No. 10-9, PageID.653-655), and did not present any witnesses in his defense. (*Id.* at PageID.656.)  Defense counsel urged the jurors to use their common sense and conclude that there was insufficient evidence to find Petitioner guilty of murder.  Defense counsel argued: there was no plausible motive for the murder; the prosecution's theory that Dioneta did not want to "snitch" on Petitioner made no sense because the victim was Dioneta's friend; Crosby had a legitimate basis for his statement to the police; the threats made to Petitioner's mother were a logical basis for Petitioner's disappearance after the shooting; Petitioner and one other witness implicated Lafayette Hill, also known as "Tiger," in the crime; and Dontez gave inconsistent testimony.  (*Id.* at PageID.673-685.)

The trial court instructed the jury on first-degree murder, second-degree murder as a lesser offense of first-degree murder, and felony-firearm.  (*Id.* at PageID.705-708.)  On January 23, 2015, the jury found Petitioner guilty, as charged, of first-degree, premeditated murder and felony firearm.  (*Id.* at PageID.715-717.)

### B.  The Sentence and Appeal

The trial court sentenced Petitioner to two years in prison for the felony-firearm conviction and to a consecutive term of life imprisonment without the possibility of parole for the murder conviction.  (ECF No. 10-10, PageID.732.)   In an appeal of right,

Petitioner argued through counsel that the trial judge coerced Dontez to change his testimony and identify Petitioner as the shooter by threatening Dontez with a charge of perjury and life imprisonment. Petitioner argued in the alternative that his trial attorney was ineffective for failing to object to the trial court's statements. Petitioner also argued that the prosecution erred by introducing evidence of three witnesses' prior inconsistent statements. In the alternative, Petitioner argued that his attorney was ineffective for failing to object to the evidence or to request a jury instruction on the limited use of prior inconsistent statements. (ECF No. 10-11, PageID.753-754.)

The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions. *See Williams*, 2016 WL 3707998. Petitioner raised the same claims through counsel in the Michigan Supreme Court. (ECF No. 10-12, PageID.929-936.) The Michigan Supreme Court denied leave to appeal on April 4, 2017, because it was not persuaded to review the issues. *See People v. Williams*, 500 Mich. 959, 891 N.W.2d 494 (2017).[1]

### C. The Initial Petition, Motion to Dismiss, and Amended Petition

On December 12, 2017, Petitioner filed his initial petition for the writ of habeas corpus under 28 U.S.C. § 2254. He raised the same two claims that he presented to the state courts on direct review and a third claim which alleged that trial counsel failed to present a complete defense in his behalf.

Respondent moved to dismiss the petition on the basis that Petitioner failed to exhaust state remedies for his third claim. Respondent also asserted that Petitioner

---

[1]    Michigan Supreme Court Justice David F. Viviano did not participate in the case because of his familial relationship with the trial judge, Antonio Viviano. *Williams*, 891 N.W.2d 494.

had failed to abide by Rule 2(c)(2) of the Rules Governing Section 2254 Petitions by not stating any facts in support of his claims.  Petitioner moved to amend his petition by deleting his unexhausted third claim and by including additional facts to support his exhausted claims.

The court granted Petitioner's motion to amend his petition and denied Respondent's motion to dismiss the petition because the amended petition contained only Petitioner's two exhausted claims and because Petitioner satisfied Habeas Rule 2(c)(2) by attaching his state appellate briefs to his amended petition.  Respondent subsequently filed an answer to the amended petition (ECF No. 14), and Petitioner filed a reply (ECF No. 15).  The court proceeds to address Petitioner's claims, using the following standard of review.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362,

405-406 (2000) (alterations added)).

> "Under the 'unreasonable application' clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal principle
> from [the Supreme] Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case." The "unreasonable application"
> clause requires the state court decision to be more than incorrect or
> erroneous. The state court's application of clearly established law must be
> objectively unreasonable.

*Id. at* 75 (quoting *Williams,* 529 U.S. at 409-10, 412-13 (2000)).

"AEDPA thus imposes a highly deferential standard for evaluating state-court

rulings, and demands that state-court decisions be given the benefit of the doubt."

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake . . . one 'so

lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement,' slips through the

needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting

*Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

### III. DISCUSSION

### A. The Trial Judge's Alleged Threat

Petitioner alleges that the trial court deprived him of due process by threatening

to charge Dontez with perjury after Dontez denied seeing Petitioner shoot the victim.

The Michigan Court of Appeals explained the context for this claim as follows:

7

At the preliminary examination, Dontez testified that he saw defendant shooting into the driver's side of the car in which Scarborough was sitting, and that he saw a gun in defendant's hand.  At trial, Dontez initially testified that he did not see defendant at the time of the shooting.  The prosecutor then asked Dontez whether he remembered testifying under oath at the preliminary examination, and Dontez stated that he did, after which defense counsel requested a bench conference.  After the bench conference, the judge excused the jury.

*Williams*, 2016 WL 3707998, at *3.  The trial judge then engaged in the following colloquy

with Dontez:

THE COURT*:*  Young Man, I want to advise you of your rights, all right.

First of all, you have been sworn to tell the truth on the stand. My understanding is there are at least three other statements that you've made under oath.

Now, if you lie under oath, in other words, you deliberately say something under oath that is not true, that's a criminal act in the State of Michigan, and I think the penalty is fourteen years in prison, is it not?

[THE PROSECUTOR]:  It would be life in this case because the offense is a life offense, so it would be life.

THE COURT: Then it would be - - so, do you understand what he just said? Because it's a life offense, it would be a life offense of prison?

How old are you?

[THE WITNESS]:  I'm sixteen.

THE COURT*:*  Pardon?

[THE WITNESS]*:* I'm sixteen.

THE COURT:  All right.  And I know you were incarcerated last night, right?

[THE WITNESS]:  Yes.

THE COURT:  Would you think of living the rest of your life in jail?

[THE WITNESS]:  No.

THE COURT:  All right.

8

So, when you take an oath to tell the truth and you deliberately lie, you're placing yourself in jeopardy of committing perjury.  I want you to know that.

[THE WITNESS]:  Yes.

THE COURT:  Do you have any questions?

[THE WITNESS]:  No.

(ECF No. 10-7, PageID.343-344.)

The trial court then asked defense counsel whether she was satisfied, and she responded, "Yes, Your Honor."  (*Id.* at PageID.344.)  When the jury re-entered the courtroom, the prosecutor continued his direct examination of Dontez.  Dontez then testified that, after he heard a shot, he looked in the direction of the shot and saw Petitioner with a gun in his hand.  He saw Petitioner shoot a couple of times into the car where Scarborough was seated.  (*Id.* at PageID.345-348.)

Dontez also admitted that in his statement to the police he said that he saw Petitioner shoot and kill Scarborough, and he circled Petitioner's picture in a group of six photographs that the police showed him.  (*Id.* at PageID.351-353.)  Further, during his testimony at a hearing on an investigative subpoena, he said things that were similar to his testimony at trial, and at the preliminary examination, he told the judge that he saw Petitioner shoot or kill Scarborough.  (*Id.* at PageID.353-355.)

Petitioner now contends that the trial court's comments to Dontez intimidated and coerced Dontez to change his trial testimony and incriminate Petitioner.  According to Petitioner, Dontez' incriminating testimony was crucial to the prosecution's case because (1) Dontez was the only witness to identify him as the shooter, and (2) the prosecution had no physical evidence tying him to the homicide.  Petitioner also

9

contends that his trial attorney's failure to object to the trial court's statements to Dontez fell below an objective standard of reasonableness and prejudiced the defense. (ECF No. 11, PageID.1060, 1095, 1099-1100.)

The Michigan Court of Appeals reviewed Petitioner's claim affecting his substantial rights for "plain error" and concluded that the trial court's comments to Dontez were not reversible error. *Williams*, 2016 WL 3707998, at *3. The state appellate court limited its review of Petitioner's related claim about trial counsel to errors apparent on the record and concluded that trial counsel's failure to object to the trial court's comments did not constitute ineffective assistance of counsel. *Id.*

## 1. Procedural Default

Respondent argues that Petitioner procedurally defaulted his claim and that Petitioner has failed to show cause for his default, resulting prejudice, or a miscarriage of justice. In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Pursuant to the related doctrine, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In this circuit, "[a] habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.'" *Theriot v. Vashaw*, --- F.3d ----, 2020 WL 7379397, at *2 (6th Cir. Dec. 16, 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017)); *accord Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

These three factors are satisfied here.  First, the relevant procedural rule is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.'"  *People v. Cain*, 498 Mich. 108, 114, 869 N.W.2d 829, 832 (2015) (quoting *People v. Grant,* 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994)). "[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.'"  *People v. Carines*, 460 Mich. 750, 764–65, 597 N.W.2d 130, 139 (1999) (quoting *Grant*, 520 N.W.2d at 130).

Petitioner violated this issue-preservation rule by not objecting at trial to the trial court's comments to Dontez.  Although defense counsel requested a bench conference when the prosecutor first questioned Dontez about his testimony at the preliminary examination, the transcript of trial does not indicate what was said at the conference or even whether the conference actually occurred.  But defense counsel did not object after the trial court advised Dontez about the risks associated with giving false testimony.  In fact, she indicated that she was satisfied with the colloquy between the trial court and Dontez.  (ECF No. 10-7, PageID.344.)   The first procedural default factor is satisfied.

The second procedural-default factor also is satisfied because the Michigan Court of Appeals reviewed Petitioner's claim for "plain error" due to Petitioner's failure to preserve his claim for appeal.  *See Williams,* 2016 WL 3707998, at *2.  "[A] state appellate court's review for plain error is enforcement of a procedural rule."  *Theriot*,

2020 WL 7379397, at *2; *accord Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default.").

The third factor requires a determination of whether the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim. The Sixth Circuit has determined that "Michigan's contemporaneous-objection rule 'constitutes an adequate and independent state ground for foreclosing federal review.'" *Theriot*, 2020 WL 7379397, at *2 (quoting *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011)). Thus, the third and final procedural-default factor is satisfied.

## 2. Overcoming the Procedural Default

"A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064-2065 (2017) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 84 (1977)). "To establish 'cause' . . . the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* at 2065 (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

## a. Trial Counsel as "Cause"

Petitioner alleges that his trial attorney was ineffective for failing to object to the state trial court's comments to Dontez. (ECF No. 15, PageID.1285.) An attorney's error can be cause for a procedural default. *Carrier*, 477 U.S. at 486-92; *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "Not just any deficiency in counsel's performance

12

will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *see also West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) ("Constitutionally ineffective assistance of counsel may constitute 'cause' to excuse procedural default in certain cases.")

To prevail on a claim of ineffective assistance counsel, Petitioner must show that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  *Id.* at 696.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.

## b.  Application of *Strickland*

To determine whether trial counsel was ineffective for failing to object, the court looks to Petitioner's underlying claim that the trial court's comments to Dontez were improper.  Petitioner bases his claim on the Supreme Court's decision in *Webb v.*

*Texas*, 409 U.S. 95 (1973).  In that case the trial judge, on his own initiative, made the

following remarks to the sole witness for the defense:

> Now you have been called down as a witness in this case by the Defendant.
> It is the Court's duty to admonish you that you don't have to testify, that
> anything you say can and will be used against you.  If you take the witness
> stand and lie under oath, the Court will personally see that your case goes
> to the grand jury and you will be indicted for perjury and the liklihood (sic) is
> that you would get convicted of perjury and that it would be stacked onto
> what you have already got, so that is the matter you have got to make up
> your mind on.  If you get on the witness stand and lie, it is probably going to
> mean several years and at least more time that you are going to have to
> serve.  It will also be held against you in the penitentiary when you're up for
> parole and the Court wants you to thoroughly understand the chances
> you're taking by getting on that witness stand under oath.  You may tell the
> truth and if you do, that is all right, but if you lie you can get into real trouble.
> The court wants you to know that.  You don't owe anybody anything to testify
> and it must be done freely and voluntarily and with the thorough
> understanding that you know the hazard you are taking.

*Id.* at 95-96.

The Supreme Court concluded from these remarks that the trial judge's

threatening remarks "effectively drove that witness off the stand, and thus deprived the

petitioner of due process of law under the Fourteenth Amendment."  *Id.* at 98.  In

reaching this conclusion, the Supreme Court pointed out that

> [t]he trial judge gratuitously singled out this one witness for a lengthy
> admonition on the dangers of perjury.  But the judge did not stop at warning
> the witness of his right to refuse to testify and of the necessity to tell the
> truth.  Instead, the judge implied that he expected Mills to lie, and went on
> to assure him that if he lied, he would be prosecuted and probably convicted
> for perjury, that the sentence for that conviction would be added on to his
> present sentence, and that the result would be to impair his chances for
> parole.

409 U.S. at 97 (footnote omitted).  The Supreme Court then stated that, despite the

great disparity between the trial judge and the witness, "the unnecessarily strong terms

used by the judge could well have exerted such duress on the witness' mind as to

14

preclude him from making a free and voluntary choice whether or not to testify." *Id*. at 98.

According to the Sixth Circuit Court of Appeals, however,

> *Webb* . . . does not stand for the proposition that merely warning a witness of the consequences of perjury demands reversal. Judges and prosecutors do not necessarily commit a *Webb* type violation merely by advising a witness of the possibility that he or she could face prosecution for perjury if his or her testimony differs from that he or she has given previously. In fact, the government has an obligation to warn unrepresented witnesses of the risk that the testimony they are going to give can be used against them.

*United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (quotations removed).

Unlike the trial judge in *Webb*, the judge who presided over Petitioner's trial did not threaten to have Dontez charged with perjury. Nor did the judge state that Dontez would likely be convicted of perjury. Instead, he merely advised Dontez that if Dontez deliberately said something untrue while under oath, he would be placing himself in jeopardy of committing perjury. The judge possessed the discretion to warn Dontez about the possibility of incriminating himself, *see United States v. Arthur,* 949 F.2d 211, 215 (6th Cir. 1991), and his comments did not go beyond what appears to have been necessary and appropriate. *See Pierce*, 62 F.3d at 832 (quoting *Jackson*, 935 F.2d at 847).

Because the trial judge's remarks to Dontez were not improper, trial counsel's failure to object to the remarks did not amount to constitutionally ineffective assistance of counsel. *See Tackett v. Trierweiler,* 956 F.3d 358, 375 (6th Cir. 2020) (stating that "[t]he failure to raise a meritless claim does not constitute ineffective assistance of counsel" and that trial counsel's failure to raise a claim did not constitute ineffective assistance of counsel because the underlying legal claim lacked merit). And "[a]ttorney

15

error short of ineffective assistance of counsel does not constitute cause for a procedural default." *Carrier*, 477 U.S. at 492; *accord Davila*, 137 S. Ct. at 2062 ("[A]ttorney error does not qualify as 'cause' to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel."); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (holding that appellate counsel's failure to raise the petitioner's claims on direct appeal did not establish cause to excuse the petitioner's procedural default because the underlying claims were meritless); *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005) (explaining that counsel's deficient performance may constitute cause for procedural default only if it is constitutionally ineffective under *Strickland*).

### c.  Prejudice and Miscarriage of Justice

The court need not determine whether the alleged constitutional error prejudiced Petitioner because he has not established "cause" for his failure to comply with state law.  *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).   In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence,

16

trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the court with any new evidence of actual innocence.  Therefore, a fundamental miscarriage of justice will not occur as a result of the court's failure to adjudicate the merits of Petitioner's claim, and the claim is procedurally defaulted.  *See Schlup*, 513 U.S. at 324.

### 3.  The Independent Claim of Ineffective Assistance of Counsel

Petitioner asserts as an independent claim that his trial attorney was ineffective for failing to object to the trial court's comments to Dontez.  To prevail on this claim, Petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential," and because of the difficulties inherent in evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'"  *Richter*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

Petitioner's trial attorney arguably satisfied *Strickland's* deferential standard, because the right at issue in *Webb* was the right to present a defense, and Petitioner was not entitled to have someone deprive the prosecution of its case by lying on the

witness stand.  *United States v. Goshen*, 14 F.3d 602, 1993 WL 503728, at *2 (6th Cir.

1993).  The trial judge, moreover, was encouraging Dontez to give truthful testimony,

not necessarily testimony that was favorable to the prosecution.  The trial judge's

comments to Dontez were proper, and an objection would have lacked merit.

Furthermore, the state appellate court's decision–that trial counsel was not

required to advocate a meritless position–is entitled to deference.  Its rejection of

Petitioner's claim about trial counsel was not contrary to, or an unreasonable application

of, *Strickland*.  *See* 28 U.S.C. § 2254(d).  Therefore, Petitioner is not entitled to relief on

his independent claim of ineffective assistance of counsel.  *See Richter*, 562 U.S. at

105.

## B.  The Prosecutor's Questions About Witnesses' Prior Inconsistent Statements

Petitioner claims that the prosecutor erred by introducing three witnesses' prior

inconsistent statements which incriminated him.  The three witnesses were Dioneta,

Crosby, and Khalilah Williams.   According to Petitioner, the Michigan Supreme Court's

decision in *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557 (1994), as clarified in

*People v. Kilbourn*, 454 Mich. 677, 563 N.W.2d 669 (1997), prohibited the prosecutor

from impeaching these three witnesses, particularly Crosby and Ms. Williams, with their

prior inconsistent statements.  (ECF No. 11, PageID.1102, 1105-1110.)

Petitioner concedes that Dioneta's prior statements may have been admissible

under *Stanaway* because Dioneta was present during the shooting and his credibility

was an issue.  Nevertheless, Petitioner would like the court to consider the cumulative

impact of the prosecutor's alleged impeachment of Dioneta, Crosby, and Ms. Williams.

According to Petitioner, the prosecutor had no reason to challenge the testimony of

Crosby and Ms. Williams, because those two witnesses had no personal knowledge about the shooting and, thus, there was no basis for questioning their credibility. (*Id.* at Page ID.1108-1109.)

Petitioner argues that the prosecutor's error in introducing the witnesses' prior statements was not harmless because (1) there was a dearth of incriminating evidence apart from Dontez Abram's testimony, and (2) the trial judge failed to instruct the jury on the proper use of prior inconsistent statements. (*Id.* at PageID.1110.) Finally, Petitioner argues that his trial attorney was ineffective for failing to request, or object to the absence of, a jury instruction on the limited use of prior inconsistent statements. (*Id.* at PageID.1111-1112.)

## 1. Procedural Default

The Michigan Court of Appeals was the last state court to adjudicate Petitioner's claim in a reasoned decision. It determined that the disputed prior statements were properly used at trial and that any error did not require reversal. *See Williams*, 2016 WL 3707998, at *4-6. The Court of Appeals then stated that it was reviewing Petitioner's claim for "plain error" affecting Petitioner's substantial rights because Petitioner did not preserve the issue for appellate review by objecting at trial on the basis that the statements were hearsay. *Id.* Due to the state court's review for "plain error," Respondent argues that Petitioner procedurally defaulted his evidentiary claim.

As explained above, "[a] habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.'" *Theriot*, 2020 WL 7379397, at *2. A

19

state prisoner may pursue a procedurally defaulted claim "if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation,'" *Davila*, 137 S. Ct. at 2064-2065, "or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

The relevant state procedural rule is Michigan's issue-preservation rule, which requires defendants in criminal cases to preserve an issue of prosecutorial misconduct by contemporaneously objecting and requesting a curative jury instruction. *People v. Bennett*, 290 Mich. App. 465, 475, 802 N.W.2d 627, 634-35 (2010).  Petitioner concedes that he did not object to the prosecutor's impeachment of Ms. Williams, but he maintains that he did object to the introduction of Crosby and Dioneta's prior statements. (ECF No. 11, PageID.1111.)   The record, however, indicates that, although defense counsel did object on hearsay grounds when the prosecutor asked Crosby what Dioneta had said to Crosby about the shooting, defense counsel did not object when the prosecutor attempted to impeach Crosby with his statement to the police. (ECF No. 10-8, at PageID.463-466.)

Defense counsel also did not make a proper objection to the prosecutor's impeachment of Dioneta.  Defense counsel did object when the prosecutor asked Dioneta whether he had said something to Crosby about the shooting.  (ECF No. 10-7, PageID.409-411.)  But she did not object on hearsay grounds when the prosecutor subsequently asked Dioneta about his statement to the police and whether he had told the police that Petitioner killed Scarborough.  (*Id.* at PageID.415-416.)  The only

objection that defense counsel made at that point was that the prosecutor was not reading Dioneta's statement verbatim.  (*Id.* at PageID.417.)

The court concludes that Petitioner satisfied the first procedural default factor. *See Theriot*, 2020 WL 7379397, at *2.  He did not make proper contemporaneous objections to the prosecutor's impeachment questions. *See Bennett*, 802 N.W.2d at 634-35.

The second factor–whether the state court enforced the state procedural rule–is also satisfied.  The Michigan Court of Appeals was the last state court to issue a reasoned decision on Petitioner's claim, and it reviewed the claim for "plain error" because Petitioner did not object at trial to the admission of the prior inconsistent statements as hearsay.  *Williams*, 2016 WL 3707998, at *4.  A state appellate court's "plain error" review is considered enforcement of a procedural default.  *See Theriot*, 2020 WL 7379397, at *2; *Hinkle*, 271 F.3d at 244.

The third procedural default factor concerns the adequacy and independence of the state procedural rule.  *See Theriot*, 2020 WL 7379397, at *2.  Michigan's contemporaneous-objection rule is an adequate and independent state ground for denying federal review.  *Id.*; *Taylor,* 649 F.3d at 450-451. Thus, all three procedural default factors are satisfied in connection with Petitioner's claim concerning witnesses' prior inconsistent statements.

## 2.  Overcoming the Procedural Default

Petitioner has not alleged "cause" for the procedural default of his second claim. (*See* ECF No. 15, PageID.1286-1287.)  It therefore appears that Petitioner has abandoned any "cause and prejudice" argument.  *See Wheeler,* 852 F.3d at 515.

To the extent Petitioner *is* asserting that his trial attorney was "cause" for his failure to make proper objections to evidence of the witnesses' prior inconsistent statements, he must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The Michigan Court of Appeals determined that the impeachment evidence was properly admitted, *Williams*, 2016 WL 3707998, at *4-6, and this court is bound by the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Because the evidence was admissible, defense counsel was not ineffective for failing to object to the evidence. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial," *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013), and errors that do not rise to the level of constitutionally ineffective assistance are not "cause" to excuse a procedural default. *Carrier*, 477 U.S. at 492.

The court need not determine whether Petitioner was prejudiced by the alleged errors because he has not established "cause" for his failure to comply with state law. *Simpson*, 238 F.3d at 409. And because Petitioner has not presented the court with any new and credible evidence of actual innocence, the court's failure to consider his claim will not result in a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 324. The claim is procedurally defaulted.

**4. The Merits of the Evidentiary Determinations**

Even if Petitioner's evidentiary claim were not procedurally defaulted, it raises only an issue of state law, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A state court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered "the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004); *see also Hoffner*, 622 F.3d at 496 (citing *Estelle,* 502 U.S. at 67-68) ("[A] violation of state law is not grounds for *habeas* relief unless it rises to the level of a due process deprivation."). For the following reasons, the prosecutor's alleged errors did not deprive Petitioner of due process or render his trial fundamentally unfair.

**a. Legal Framework**

"[I]mpeachment evidence . . .  generally should be admitted only for the limited purpose of determining the witness's credibility." *Apanovitch v. Houk*, 466 F.3d 460, 486 (6th Cir. 2006). "The prosecution may not employ impeachment by prior inconsistent statement 'as a mere subterfuge to get before the jury evidence not otherwise admissible.'" *Id.* at 485 (quoting *United States v. Buffalo,* 358 F.3d 519, 522-23 (8th Cir. 2004)). In Michigan, however, "evidence of a prior inconsistent statement of [a] witness may be admitted to impeach [the] witness even though the statement tends directly to inculpate the defendant." *Williams*, 2016 WL 3707998, at *4 (quoting *Kilbourn,* 563 N.W.2d at 669). An exception to this rule appears in *Stanaway,* "where the [Michigan Supreme] Court held that '[a] prosecutor cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case.'" *Id.* (quoting *Kilbourn,* 454 Mich. at 682). Stated differently,

23

> [a] prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial. Thus, under *Stanaway,* a very narrow rule exists where impeachment with a prior inconsistent statement should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case.

*Id.* (quoting *Stanaway,* 446 Mich. at 693; *Kilbourn,* 454 Mich. at 683).

**b. Dioneta Abram**

At trial, Dioneta denied knowing what happened to Scarborough during the shooting, even though he was seated directly behind Scarborough in the car at the time. (ECF No. 10-7, PageID.407-408.)  He also denied hearing people screaming that Petitioner had shot Scarborough.  (*Id.* at 409-410.)  After Dioneta denied telling Crosby that Petitioner shot Scarborough, (*id.* at PageID.411, 413), the prosecutor questioned Dioneta about his statement to the police in which he apparently stated that Petitioner had shot Scarborough and that everyone there said Petitioner was the shooter.  (*Id.* at PageID.415-420.)  Later, Dioneta also stated that he did not see anyone there with a gun.  (*Id.* at PageiD.42.)

The Michigan Court of Appeals stated that the prosecutor did not err in admitting evidence of Dioneta's prior inconsistent statement, because Dioneta gave other testimony for which his credibility was relevant.  Specifically, Dioneta testified that he was seated in the car behind Scarborough when Scarborough was shot; Dioneta testified about events that occurred before, during, and after the shooting; his testimony was different from his brother Dontez' testimony in several respects; and he had direct knowledge of the incident in question.  *Williams*, 2016 WL 3707998, at *5.

The Court of Appeals opined that the prosecution did not merely elicit Dioneta's denials to present substantive evidence that otherwise would have been inadmissible. Dioneta's credibility was relevant to other important testimony and, therefore, the use of his prior inconsistent statement to the police to impeach his trial testimony did not violate *Stanaway*.  *Id.*  The impeachment evidence also did not deprive Petitioner of due process or a fair trial, because the prosecutor did not impeach Dioneta as a mere subterfuge to get before the jury evidence not otherwise admissible.  *See Apanovitch*, 466 F.3d at 486.

**c.  Sylvone Crosby**

Crosby testified that Dioneta did not tell him who shot Scarborough.  (ECF No. 10-8, PageID.463.)  The prosecutor attempted to impeach this testimony by asking Crosby about his statement to the police in which he stated that Dioneta told him that Petitioner shot Scarborough.  (*Id.* at PageID.463-466.)

Crosby had no personal knowledge about the shooting, and his prior statement to the police was relevant to the central issue in the case, which was the identity of the shooter.   However, Crosby also testified that he lied to the police when he told an officer that he had previously seen Petitioner with a gun.  (*Id.* at PageID.471.)  Thus, Crosby's credibility was relevant to testimony other than his testimony about Dioneta's statement to Crosby, and his prior statement was admissible.  *See Williams*, 2016 WL 3707998, at *5.  Additionally, any error in the prosecutor's impeachment of Crosby with his prior statement to the police could not have a "substantial and injurious effect or influence" on the jury's verdict, *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993), and was harmless, given the other evidence in the case.

### d. Khalilah Williams

Petitioner's mother, Khalilah Williams, testified that she did not tell the police that she saw Petitioner with a gun on the day before the shooting.  (ECF No. 10-8, PageID.489.).  The prosecutor then showed Ms. Williams her prior statement in which she told a police officer that the last time she saw Petitioner with a gun was the day before the shooting.  (*Id.* at PageID.489-490.)  Ms. Williams had no personal knowledge about the shooting, but the Michigan Court of Appeals stated that her prior statement was admissible because it did not go to the central issue in the case.  *See Williams*, 2016 WL 3707998, at *6.   Further, any error in admitting the evidence was harmless because Ms. Williams' prior statement did not directly inculpate Petitioner in the shooting.  *Id.*

### e. Summary

The court concludes that the prosecutor's alleged errors in impeaching Ms. Williams, Crosby, and Dioneta did not deprive Petitioner of due process or a fair trial. *See McAdoo*, 365 F.3d at 494.  Therefore, even if his evidentiary claim were not procedurally defaulted or incognizable, his claim lacks merit, and habeas relief is not warranted.

For similar reasons, defense counsel was not ineffective for failing to object to the use of the witnesses' prior inconsistent statements, and the decision of the Michigan Court of Appeals–that "counsel was not ineffective for failing to object to the admission of these statements"–was not contrary to, or an unreasonable application of, *Strickland*. *See Williams*, 2016 WL 3707998, at *6; 28 U.S.C. § 2254(d).  Petitioner is not entitled to the writ of habeas corpus on his evidentiary claim regarding the impeachment of

witnesses with their prior inconsistent statements and his related claim about defense counsel's failure to object to the evidence.

**5. Defense Counsel's Failure to Request a Jury Instruction**

In his final claim, Petitioner alleges that his trial attorney should have either requested a jury instruction on the proper use of prior inconsistent statements or objected to the lack of such an instruction.  (ECF No. 11, PageID.1111-1112.)  The Michigan Court of Appeals agreed with Petitioner because the standard jury instruction on that issue informs the jury not to consider prior inconsistent statements as substantive evidence of the defendant's guilt and to use the evidence only when deciding whether the witness was credible.  *Williams*, 2016 WL 3707998, at *6.  The Court of Appeals, nevertheless concluded that Petitioner was not prejudiced by counsel's performance.  *Id.*

The prosecutor did refer briefly to Dioneta's statement to the police in his closing argument.  (ECF No. 10-9, PageID. 668.)   But the prosecutor did not encourage the jurors to use Dioneta's statement as substantive evidence.  Instead, the prosecutor relied on other evidence to prove his case, namely:  Dontez' testimony that Petitioner shot Scarborough; Dontez' lack of a motive for inculpating Petitioner; and Petitioner's own conduct, including his admission that he was present during the shooting, his flight after the shooting, and the fact that he was the only person to claim that someone else shot Scarborough.  (ECF No. 10-9, PageID.657-658, 660-663, 666, 686-689, 692-695.) Thus, there is not a substantial probability that the result of the trial would have been different if the trial court had instructed the jurors that the witnesses' prior inconsistent

27

statements were not substantive evidence.  Defense counsel's failure to request the instruction, or object to the lack of the instruction, did not prejudice Petitioner.

Petitioner has failed to satisfy both prongs of the *Strickland* test, and the state appellate court's rejection of his claim about trial counsel was not contrary to, or an unreasonable application of, *Strickland*.  28 U.S.C. § 2254(d).  Petitioner, therefore, is not entitled to relief on his claim that defense counsel failed to request, or object to the lack of, a jury instruction on prior inconsistent statements.

## IV.  CONCLUSION

Petitioner's claims concerning the trial court's statements to Dontez and the prosecutor's use of impeachment evidence are procedurally defaulted, and Petitioner has not shown cause and prejudice or a miscarriage of justice to overcome the procedural defaults.  In addition, Petitioner's claims of ineffective assistance of counsel lack merit, and the state appellate court's rejection of those claims was objectively reasonable.  Accordingly,

IT IS ORDERED that the Amended Petition for a Writ Of Habeas Corpus (ECF No. 17) is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED because reasonable jurists would not find the court's assessment of Petitioner's constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Reasonable jurists also would not find it debatable whether the court's procedural rulings were correct.  *See id*.  Petitioner may apply to the Court of Appeals for a certificate of appealability.

Finally, IT IS ORDERED that, because Petitioner's claims are not entirely frivolous, an appeal could be taken in good faith, 28 U.S.C. § 1915(a)(3), and he may proceed *in forma pauperis* on appeal if he appeals this decision.

s/Robert H. Cleland                           /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 11, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 11, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                               /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\17-13995.WILLIAMS.AmendedHabeasCorpusPetition.BH.RMK.RHC.docx